HENRY A. CRAM *et al.*

*v.*

THE CITY OF CHICAGO.

*Filed at Ottawa October 31, 1891.*

1. SPECIAL ASSESSMENTS—*objections on application to confirm.*  On application to confirm a special assessment made for curbing, filling and paving a street, evidence that a different character of improvement and different materials used would be much better and cost much less, is inadmissible in behalf of an objector.

2. SAME—*description of premises—power to subdivide.*  Where the real estate abutting upon a street ordered to be improved is laid out into blocks, the city, in making assessments on the same, will have no right to subdivide such blocks into lots.  It must proceed against the property benefited as it is known and legally described.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Messrs. WILSON & MOORE, for the appellants:

The arbitrary subdivision of property for purposes of assessment is unauthorized by law.  *Warren* v. *Chicago,* 118 Ill. 329.

The blocks in question are "city lots," under the meaning of the statute.  *People* v. *Palmer,* 113 Ill. 346.

The statute in terms requires each lot to be set down in the assessment roll, and separately assessed.  Rev. Stat. chap. 24, sec. 140.

Mr. WILLIAM J. DONLIN, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This record contains three separate and distinct special assessment proceedings, consolidated and tried in the county court as one cause. The first is a proceeding for curbing, filling and paving Root street, in Chicago, from the west line of State street to the east line of Halsted street. The second is a proceeding for water service-pipes, and the third for house drains, in the street, from certain lot lines to mains which had been previously laid.

But one error is relied upon to reverse the judgment as respects the first proceeding. The appellants offered to prove that a good macadam road of the same dimensions, of an average thickness of a foot and a half, would afford as complete accommodation for the property in the vicinity, as perfect means of access and egress, would last longer, be more easily repaired, and would cost from twenty-five to thirty per cent less than the improvement provided for by the ordinance. The court, upon objection, refused to admit the offered evidence, and upon this ground appellants seek to reverse the judgment of confirmation. The same question arose in *Cram et al.* v. *City of Chicago,* 138 Ill. 506, and we there held that the ruling of the court in the admission of the offered evidence was correct. The decision in that case is conclusive of the question raised here. Our views on the question are fully expressed in the case cited, and it will not be necessary to repeat them here. The judgment of the county court confirming the assessment for curbing, filling and paving Root street, from the west line of State street to the east line of Halsted street, will be affirmed.

We now come to the second and third proceedings. The property assessed consisted of unsubdivided blocks 15, 13, 9, 11, 12, 10 and 16, in Superior Court partition of the west half of the north-west quarter of section 4, township 38, north, range 14, east, with a frontage of some 1325 feet on Root

street. These blocks had not been platted or divided by the owners into lots, but the city, in making the assessment, undertook to make a division. The ordinance for the water service-pipes was as follows:

"Section 1. That a water service-pipe be and is hereby ordered laid from each of the lots or parcels of land hereinafter described, abutting on Root street, from State street to Halsted street, in said city, to connect with the public main water pipe in Root street, in front of or adjoining said lot or parcel of land."

Then follows a series of descriptions contained in the ordinance for drain pipes, subdividing the property into strips of twenty-five and one hundred feet deep, each as therein shown. Each of these strips was assessed a certain sum. The same course was also pursued in making the assessment for the house drains.

Section 4 of the general Revenue law (Rev. Stat. 1874, p. 838,) requires each *tract* or *lot* of real property to be valued at its fair cash value, etc. Section 76 of the same statute requires the assessors to actually view and determine the fair cash value of each *tract* or *lot* of land listed for taxation, and set down in the book furnished them, the value of each *tract* or *lot*. In *Howe* v. *The People*, 86 Ill. 288, these sections of the statute were considered, and it was held to be the duty of the assessor to assess each *tract of land separately*, and a compliance with the statute was held essential to the validity of the tax. While nothing is said in the statute in regard to the description which shall be given to the tract or lot, yet it is apparent that a legal description was intended. If the tract of land was a forty-acre tract, the government description should be given; and if a town or city lot, then it should be described as designated on the recorded plat of the city or incorporated town.

The rule which governs in the assessment of property under the general Revenue law would also, upon principle, be the

correct one in a proceeding for special assessments. Section 139 of the Revised Statutes of 1874 (page 325,) makes it the duty of the commissioners to examine the locality where the improvement is proposed to be made, and the *lots, blocks, tracts and parcels of land,* and to assess the amount found to be of benefit to the property, upon the several lots, blocks, tracts and parcels of land. Section 140 goes further, and requires the commissioners to make an assessment roll, in which shall appear the names of the owners, so far as known, a description of each *lot, block, tract or parcel of land,* and the amount assessed as special benefit thereto. What description, it may be asked, was intended by the language here employed? Was it some arbitrary description, or was it a description by which the lot or tract of land was legally known and designated? The answer to this is obvious. An arbitrary description, or one having no foundation in fact, could never have been contemplated. The property fronting on Root street was divided into blocks, and in making the assessment the city had no authority to subdivide these blocks into strips of twenty-five feet, and make the assessment on the property according to that description; but, on the other hand, if the city desired to assess the property, it should have proceeded against the property as it was known and legally described. The question is not a new one in this court. The same question arose in *Warren* v. *City of Chicago,* 118 Ill. 331, and a similar assessment was condemned.

The judgment confirming the assessment for water service-pipes, and the judgment confirming the assessment for house drains, will be reversed and the causes remanded.

*Judgment affirmed in part and in part reversed.*