City of Waukegan, Illinois, Petition to Levy a Special Assessment, etc., Petitioner-Appellee, v. Joseph J. Drobnick, et al., Defendants-Appellants.

Gen. No. 64-155.

Second District.
July 9, 1965.
Rehearing denied July 31, 1965.

Mark Drobnick, of Waukegan, for appellants.

Runyard, Behanna, Conzelman & Schultz, of Waukegan, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The City of Waukegan filed a petition to levy a special assessment for the construction of a street system, water supply line, sanitary sewer stubs, and storm sewer system along a certain area within the city. This is an appeal by certain objecting property owners from an order of the former county court of Lake County affirming a report and assessment roll filed by the City of Waukegan. The appeal was taken to the Supreme Court, and upon re-examination of the nature of the relationship between special assessment proceedings and the revenue, that court concluded that the relationship was too remote to warrant direct appeal. The cause was therefore transferred to this court. (31 Ill2d 580.)

The objectors urge four basic grounds for reversal:

(1) that the trial court did not have authority to modify the assessment roll by changing the amount of the respective installments to be paid under the special assessment;

(2) that certain of the preliminary procedural steps necessary for the validity of the ordi-

91

nance for the improvements were not complied with;

(3) that certain property specially benefited was not assessed; and

(4) that the proposed improvements were totally unnecessary and oppressive.

As to the first point, the ordinance provided that the special assessments should be divided into ten installments with the first being at least 30 percent of the total. This was contrary to the provisions of sec 9–2–48 of the Illinois Municipal Code of 1961 (Ill Rev Stats 1963, c 24, par 9–2–48), which prescribes that the division into installments "shall be made so that all installments shall be equal in amount, except that all fractional amounts shall be added to the first installment, so as to leave the remaining installments of the aggregate equal in amount and each a multiple of $100."

The trial court ordered the assessment modified so that all installments would be equal in amount, except that all fractional amounts should be added to the first installment. The order set forth the specific amount of each installment and directed the Superintendent of Special Assessments to modify the assessment roll on its face to conform to the order. The order did not alter either the total assessment or any individual assessment. When the assessment roll was so modified, it was then confirmed by the court.

■ While the appellants suggest that the court had no authority to modify the assessment roll and the ordinance was thus void, no authority is cited in support of this proposition. The action of the trial court was clearly warranted under the provisions of section 9–2–61 of the Illinois Municipal Code (Ill Rev Stats 1963, c 24, par 9–2–61), which states in part:

"The court before which any such proceeding may be pending may modify, alter, change, annul, or confirm any assessment returned as specified, in addition to the authority already conferred upon it, and may take all such proceedings, and make all such orders, as may be necessary to the improvement, according to the principles of this article, . . . ."

Similar powers are conferred upon the court in section 9–2–56 of the Code. (Ill Rev Stats 1961, c 24, par 9–2–56.) Were the appellant's contention valid, we cannot visualize a case where the court could do more than declare an assessment either valid or void, even though the required modification or correction sought to be made by the court is of no consequence insofar as the improvement or assessment is concerned.

■ ■ The failure of the ordinance to divide the assessment into installments in the exact manner prescribed by the statute did not render the assessment void. The People v. Markley, 166 Ill 48, 53, 54, 46 NE 742 (1897). After the roll has been returned to the court, power over the assessment is then vested in the court and it may alter, modify or change the assessment in such manner as, in its judicial discretion, it deems proper. Chicago & W. I. R. Co. v. City of Chicago, 230 Ill 9, 13, 82 NE 399 (1907). This power includes the power to change the amount of the installments so that the assessment might conform to the technical requirements of the law. Delamater v. City of Chicago, 158 Ill 575, 585, 42 NE 444 (1895). The modification here made by the court was both proper and appropriate.

Appellants' second point is that the ordinance was not recommended by the board of local improvements; that said board did not submit the ordinance to the

city council; and that it did not keep a public record of the origin and recommendation of the improvement, all as required by statute. The weakness of this argument is that the record and additional abstract affirmatively show that all of these steps were taken.

██ ██ Appellants base this contention on the fact that nothing pertaining to this special assessment is to be found in bound volume No. 11 of said board's records. Such was the fact for the obvious reason that the board discontinued keeping its records in a bound volume in 1959. The secretary of the board of local improvements brought into the court all of the original and permanent records pertaining to this special assessment. All of the omissions alleged by appellants are shown by these records to have been done. While the records are not bound in a volume, they are no less the records of the board and, as such, are evidence that the requisite actions were taken, and such record cannot be contradicted or added to by parole. City of Chicago v. McCluer, 339 Ill 610, 616, 171 NE 737 (1930); Village of Bellwood v. Galt, 321 Ill 504, 508, 152 NE 591 (1926).

██ Accompanying the proposed ordinance for such local improvement, as presented by the board of local improvements to the City Council of the City of Waukegan, was the board's recommendation for such improvement, signed by a majority of its members, as well as an estimate of cost and plans and specifications in connection therewith. Copies of said ordinance, estimate, and recommendation, were attached to the petition, filed by the City, to levy said special assessment. The recommendation by the board was prima facie evidence that all preliminary requirements of the law had been complied with. (Village of Bellwood v. Galt, supra, 507; Ill Rev Stats 1963, c 24, par 9–2–11.) Such prima facie evidence was not rebutted by objectors'

evidence that the records of this proceeding were not in bound volume No. 11 of the board's records.

■ The appellants next contend that the assessment is void in that a country club was specially benefited by the improvement but was not assessed. The fact that the property was being used as a golf course would not prevent its being assessed if some other use were its highest and best use and the improvement would be of special benefit to the property if so used. Hinsdale Sanitary Dist. v. Hinsdale Golf Club, 363 Ill 595, 601, 2 NE2d 921 (1936). In the case at bar, there was no testimony that the highest and best use of the country club property was for some use other than for a golf course. As to property privately owned, the peculiar use to which it is presently being put is purely voluntary and the owner may change this use and obtain the benefit accruing from the improvement. City of Lincoln v. Chicago & A. R. R. Co., 262 Ill 11, 19, 104 NE 277 (1914). However, absent testimony as to any other highest and best use, the use as a golf course obtained, and such property for such use was not specially benefited by this assessment.

■ The omission of certain property from a special assessment levy does not necessarily render the assessment void. In City of Batavia v. Wiley, 342 Ill 384, 174 NE 553 (1931), at pages 392 and 393 the Court stated:

"The question arising here is, primarily, whether the commissioner or superintendent of special assessments negligently or improperly omitted from the assessment the property which objectors claim should have been inserted. The law presumes that he exercised sound judgment and discretion, and this presumption will be indulged until the contrary is shown. It will be inferred until proof to the contrary appears that some good

95 ·

reason, arising out of the character and situation of the property, existed for not including such property, and unless he acted so negligently and improperly in spreading the assessment that in effect his acts were fraudulent the assessment will not be recast."

 Joseph Drobnick testified that in his opinion the country club property would be benefited from $4,000 to $6,000 by this assessment, but he did not indicate the basis for his opinion. We cannot say that the trial court erred in finding that the appellants did not overcome the presumption of sound exercise of discretion by such testimony. Nor is the fact, that the proposed improvements run for a short distance along the edge of the country club, conclusive evidence that such property was specially benefited by the improvement. Sheedy v. City of Chicago, 221 Ill 111, 114, 115, 77 NE 539 (1906); Holdom v. City of Chicago, 169 Ill 109, 110, 48 NE 164 (1897).

The remaining argument of appellants is that the ordinance is unreasonable and oppressive, in that the improvements would not create a demand for the property and, in the event the property is rezoned for other than residential use, there are now sufficient water and sewer lines. In the particular subdivision, there are approximately 800 lots of which about 650 have been improved with single family homes within the last ten years. The subject property is a part of the yet undeveloped area which is surrounded by improved property. There was testimony that its highest and best use was for single family residences and that it was conveniently located in a desirable, well-developed district. This is unlike the case of vacant land, far removed from any development, where there had been no growth in the surrounding neighborhood for over twenty-five years. See City of Chicago v. Munici-

96

pal Engineering & Contracting Co., 292 Ill 614, 127 NE 65 (1920).

Nor does the suggestion that the subject land might someday be used for other than residential purposes, such as for a church, school, lodge or apartment building, render the construction of connecting sewer and water stubs for each lot unreasonable and oppressive. Such stubs are nothing more than side projections to enable future connections to be made, at the lowest cost, to the main sewer and water line without injury to them, or without damage to the surface of the street or road. This is not an unreasonable or oppressive procedure, but rather, a prudent one. City of East St. Louis v. Davis, 233 Ill 553, 559, 84 NE 674 (1908); Smythe v. City of Chicago, 197 Ill 311, 313, 64 NE 361 (1902). It is worthy of note, parenthetically, with reference to a change in the zoning of this land from residential to business use, that the appellants have twice sought such rezoning without success.

██ ██ The reasonableness of the improvements is first to be determined by the city council. Their determination may be set aside only where it is arbitrarily oppressive and beyond the bounds of reason. If there is room for a reasonable difference in opinion, the action of the city council is final. City of Batavia v. Wiley, 342 Ill 384, 394, 174 NE 553 (1931); City of Carbondale v. Reith, 316 Ill 538, 544, 147 NE 422 (1925). We do not find the action of the city council unreasonable, unjust or oppressive and the final judgment of confirmation is accordingly affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.